Gaei-and, J.
delivered the opinion of the court.
This suit was commenced by attachment. The plaintiff claims $1000 of the defendants, and cites J. Roberts & Oo. as garnishees. He propounded interrogatories to them to ascertain if they have not in their possession a quantity of logwood belonging to D. & J. B. Walker, two of the defendants, which was imported in the schooner Rosario from Tabasco, or the proceeds thereof, if sold. The garnishees, in their answers, say they know of no interest Walker, Knight & Co., or D. & J. B. Walker, have in the logwood. That it was consigned to them by Manuel Peyro, of Tabasco, who instructed them to sell it, invest the proceeds in dry goods, and ship them to his address. After the filing of these answers, the plaintiff came into court, and took issue with the garnishees, and again alleged the log-wood or its proceeds belong to the defendants. Some time after the joining of this issue, Josias Taylor intervened, alleging the property in the hands of the garnishees belonged to him, and if the defendants had any interest in it, he had a claim on it of a higher, nature than the attaching creditor.
Some other persons were made parties to the suit. The debt was clearly proved to be owing by Walker, Knight & Co., and some funds were adjudged to be paid the plaintiff, but a judgment was given in favor of Taylor, from which the plaintiff appealed. There is no other controversy before us than the question whether the logwood or its proceeds can be appropriated to pay the debt for which suit is brought.
In the month of February, in the year 1839, Josias Taylor, being the master, and agent for the owners, of the schooner Rosario, then lying in the port of Mobile, entered into a contract with D. & J. B. Walker, by which the last named persons chartered the schooner at the rate of five hundred dollars per month, to go on a trading voyage to Truxillo, and thence to New Or- [4] leans, two thirds of the cargo belonging to the Walkers, and the other third to Captain Taylor. The vessel was cleared for Truxillo, but put into Tabasco, as it was said, in distress, although it seemed to have been the intention of all the parties she should go there, and the clearance for Truxillo was intended to evade the French squadron, then blockading the port of Tabasco. In consequence of the manner the vessel entered the port, and other causes, the captain encountered many difficulties from the customhouse officers in landing and disposing of the cargo. A considerable por *364 tion of it was injured, and heavy expenditures incurred in the sale of it, besides a long detention of the vessel, the voyage having lasted about five and a half months. There seems to have been a heavy loss on the adventure.
The instructions of the Walkers to Oaptain Taylor, are dated at Mobile, on the 16th February, 1839, and say: “You are hereby requested to proceed hence to the port of Truxillo, or any other port you may believe best, and make disposition of our two thirds of your cargo (as per invoice furnished), to the best advantage, for cash; and after such disposition, yoq will invest the net proceeds, if any, after paying the charter of the schooner and port charges, in logwood, hides, or any other article you may think best, and return with the same to New Orleans, or any other port in the United States you may believe most practicable, and dispose of the same.” These instructions very specifically state the destination of the vessel, the manner of disposing of the cargo, the interest of the Walkers in it, and the application of the proceeds. , The evidence does not show that Oaptain Taylor failed to comply with them, or that the voyage was intentionally prolonged ; but it satisfies us, all the parties contemplated a voyage in which there would be great hazard. Their purpose was to enter a blockaded port with prohibited articles, and they must necessarily have calculated on unusual risk, embarrassment, and detention, and it appears the calculation was not incorrect.
[5] The proceeds of the cargo was invested in logwood, and there not being enough to fill the vessel, the captain borrowed money at Tabasco to purchase an additional quantity, and pledged the cargo to one Peyro for repayment, in whose name the whole appears to have been shipped, consigned to Roberts & Co.; but on the back of the bill of lading it is stated, that Oaptain Taylor is to pay Peyro $1219 60 in New Orleans, “ money advanced to purchase the within express cargo; and the moment Oaptain Taylor discharges the above sum, the cargo is entirely at his own disposal.” It does not appear the Walkers or the plaintiff ever paid any part of that sum, or that Oaptain Taylor ever did ; but we infer he did, as he renders an account of sales of the logwood. That account we have examined. It appears to us fair; and the defendants, by it, are in debt to the intervenor, after having credit for the net proceeds of the whole adventure.
. But the plaintiff says, that Oaptain Taylor did not prove he had paid his third of the outward cargo. Several replies might be given to this objection, but a conclusive one is, that the Walkers in their letter of instruction, say only two thirds of the cargo, belongs to them. The plaintiff must be hound by their admissions, as he claims under them and does not allege any fraud or collusion between the parties.
It is next urged that as the- adventure was joint, the charter of the vessel was annulled and the Walkers ought not to be charged with their proportion of the amount to be paid for her. No reason is given or authority cited to establish this position, and it appears to us a sufficient answer, that the vessel was not the property of Oaptain Taylor, and the sum fixed in the charter party was for the benefit of the owners, whose agent he was and for whom he re- *365 tamed it, out of the proceeds of the outward and inward cargoes, as we think he was authorized to do.
It is next alleged the voyage was unnecessarily long and that the "Walkers ought not to he charged for the whole time the vessel was employed. It is possible they might have some cause to complain of this, but as they have not, we know of no right the plaintiff has to attach their action for dama- [6] ges. Finally, it is said, that as two thirds of the cargo belonged to the defendants, the proceeds are liable to the attachment of the plaintiff. "We have no doubt that the net proceeds are liable, and if the plaintiff had shown there was any surplus after paying the expenses and losses incurred during the voyage, we are equally confident it would have been ordered to be paid to him, by the judge of the commercial court, but as he has failed in establishing this fact, we see no error that calls for our correction.
The judgment of the commercial court is therefore affirmed, with costs.